UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X

NATASHA SEDUNOVA,

           Plaintiff,

    -against-

CITY OF NEW YORK, MATTHEW COLLINS, Individually,
MICHAEL HOPKINS, Individually, JOHN DOE 1-2,
Individually, and JOHN or JANE DOE 3-7, Individually,
(as the true names are presently unknown),

           Defendants.

--------------------------------------------------------------------------X

**AMENDED
COMPLAINT**

13 CV 5262 (SJ)(RLM)

<u>Jury Trial Demanded</u>

    Plaintiff NATASHA SEDUNOVA, by her attorneys, Leventhal & Klein, LLP,
complaining of the defendants, respectfully alleges as follows:

### **<u>Preliminary Statement</u>**

    1.   Plaintiff brings this action for compensatory damages, punitive damages and
attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of her civil rights, as such
rights are secured by said statutes and the Constitution of the United States.  Plaintiff also asserts
supplemental state law claims.

### **<u>JURISDICTION</u>**

    2.   This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth
and Fourteenth Amendments to the United States Constitution.

    3.   Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

### **<u>VENUE</u>**

    4.   Venue is properly laid in the Eastern District of New York under 28 U.S.C. §
1391(b) in that this is the District in which the claims arose.

## JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.      Plaintiff NATASHA SEDUNOVA is a resident of Richmond County in the State of New York.

7.      Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant CITY OF NEW YORK ("the City") maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department pursuant to the laws of the State of New York.

9.      At all relevant times herein, the individually named defendants MATTHEW COLLINS, MICHAEL HOPKINS, and JOHN and JANE DOE 1 through 7 were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.  They are sued in their individual capacities.

10.     At all relevant times, the individually named defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

11.     Each and every act of the defendants alleged herein was done by said defendants while acting within the scope of their employment by the City as agents, servants, employees and officers of the NYPD.

2

## FACTS

12.    Plaintiff Natasha Sedunova was born in the Ukraine.  She came to the United States in 1981 and became a citizen in 1985.

13.    Plaintiff taught herself English.  English, however, remains a second language for plaintiff.  When she is with family and friends, plaintiff primarily speaks Russian.

14.    In 1995, plaintiff married Alexander Klimchuk.  The marriage was tumultuous. Between 1997 and 2003, plaintiff filed eight complaints against Mr. Klimchuk, seven for harassment and one for assault.

15.    Mr. Klimchuk was an alcoholic.

16.    Mr. Klimchuk also had a gambling problem.  On several occasions, plaintiff saw Mr. Klimchuk arguing with people to whom he owed money.

17.    On Sunday, September 5, 2004, at about 8:00 a.m., plaintiff awoke to find Mr. Klimchuk lying face down in the front hallway of their apartment at 1560 East 102nd Street in Brooklyn, New York.

18.    Plaintiff had last seen Mr. Klimchuk at about 10:30 p.m. the previous night, Saturday, September 4, 2004, shortly before she went to bed.

19.    Mr. Klimchuk often went out at night, not returning home until the early morning hours.

20.    Upon finding Mr. Klimchuk lying face down in the front hallway of their apartment, plaintiff called 911.

21.    At about 8:50 a.m., NYPD officers arrived at the apartment in response to a radio call.

22.     Plaintiff told the responding officers that she did not know how her husband ended up lying face down in the front hallway of their apartment.

23.     Emergency medical personnel arrived at the apartment shortly thereafter, and pronounced Mr. Klimchuk dead, apparently of a gunshot wound to the abdomen.

24.     An autopsy later performed on Mr. Klimchuk showed that he had died of a gunshot wound to his lower right abdomen, severing his Iliac Artery.

25.     The autopsy also showed that Mr. Klimchuk had a two-inch stab wound on his right thigh.

26.     Medical tests later performed on Mr. Klimchuk showed that he had consumed alcohol and cocaine shortly before his death.

27.     Plaintiff did not cause the death of her husband.  Someone else had shot and killed Mr. Klimchuk.

28.     There was no evidence of any struggle in the apartment.  There were no guns, shell casings, or shell cartridges found in the apartment.

29.     Shortly after emergency medical personnel had discovered the gunshot wound in Mr. Klimchuk's abdomen, two unidentified male police officers or detectives, hereinafter defendant John Doe 1 and defendant John Doe 2, arrived at plaintiff's apartment at 1560 East 102nd Street in Brooklyn, New York.

30.     After briefly talking with plaintiff, defendants John Doe 1 and 2 asked plaintiff if she would like to see her daughter, and plaintiff responded yes.

31.     Defendants John Doe 1 and 2 then placed plaintiff in the back seat of an unmarked police vehicle, after which defendant John Doe 1 entered the front passenger seat and

defendant John Doe 2 entered the driver's seat. They then proceeded to drive to the apartment of plaintiff's daughter, located in the vicinity of East 16th Street and Kings Highway in Brooklyn.

32.     During the trip, defendant John Doe 1 told plaintiff that she was a suspect in Mr. Klimchuk's homicide since it occurred in her apartment. After informing plaintiff that she was a suspect in Mr. Klimchuk's homicide, plaintiff was not informed by either defendant John Doe 1 or 2 of her rights under Miranda v. Arizona. 384 U.S. 436 (1966). Defendant John Doe 1 instead told plaintiff that things would be better for her if she said that she and Mr. Klimchuk had had an argument and she accidently pulled the trigger. Plaintiff told defendants John Doe 1 and 2 that she did not kill Mr. Klimchuk. She even stated "what trigger?" and told defendants John Doe 1 and 2 that Mr. Klimchuk did not own a gun. Defendants John Doe 1 and 2 then told plaintiff not to worry about the gun, and they would take care of that.

33.     After arriving at plaintiff's daughter's apartment, defendant John Doe 1 exited the vehicle and informed plaintiff that he was going to get her daughter and entered the building. While defendant John Doe 1 was in the building, defendant John Doe 2 told plaintiff that it would be good for her if she said she killed Mr. Klimchuk in self-defense.

34.     Approximately ten minutes later, defendant John Doe 1 re-entered the vehicle and told plaintiff that her daughter was not home. Defendants John Doe 1 and 2 then asked plaintiff if she wanted coffee. After she stated yes, they drove to a Dunkin Donuts establishment on Flatlands Avenue in Brooklyn.

35.     During the drive from her daughter's apartment to Dunkin Donuts, and continuing outside that location once they arrived there, defendants John Doe 1 and 2 continued to try to convince plaintiff that it would be best for her to say that she began fighting with Mr. Klimchuk and accidently pulled the trigger of the gun during the fight. Defendants John Doe 1 and 2 then

5

told plaintiff that they would create a story for her, and if she agreed to say that the story was what really transpired, she would be free to leave.

36.     Plaintiff, a 49-year old woman who had never been arrested before, was in a fragile emotional state. Not only had she just discovered her husband dead in their apartment, but the police who had arrived at the scene, the very people that she herself had called after discovering the body face down, were telling her that the best thing for her to do was to say that she had accidently killed her husband during a fight.  Plaintiff was also very scared, confused, and wanted to see her daughter.  Under those stressful conditions, plaintiff agreed to adopt the story that defendants John Doe 1 and 2 told her they would create.  Plaintiff then asked defendants John Doe 1 and 2 what she was supposed to say.  Defendants John Doe 1 and 2 responded that they were going to the precinct and she would write down their story there. Defendants John Doe 1 and 2 then drove plaintiff to the 69th Precinct at 9720 Foster Avenue in Brooklyn, New York.

37.     After arriving at the 69th Precinct, defendant John Doe 1 took plaintiff into an interrogation room and told plaintiff "I'll tell you what to write." Defendant John Doe 1 then fabricated a false confession and dictated it verbatim to plaintiff, who copied it in her own hand. The fabricated, false confession made reference to a verbal argument between Mr. Klimchuk and plaintiff that did not occur, as well as physical altercations between the two that also did not occur.  After plaintiff was done copying the false, fabricated confession, defendant John Doe 1 told her she could see her daughter, who was at the precinct, after she made a video, wherein she would have to recite the false, fabricated confession while being videotaped.

38.     After studying the false, fabricated confession for a period of time, plaintiff was then led by defendant John Doe 1 into another room, where she repeated the false fabricated

6

statement to a Kings County Assistant District Attorney while being videotaped.  Also present in that room were defendants Matthew Collins and Michael Hopkins. That was the first time that plaintiff had seen defendants Collins and Hopkins.

39.     Between 4:40 p.m. and 5:10 p.m., plaintiff made what appeared to be a videotaped confession, which in fact was the false, fabricated story that was created by defendant John Doe 1 and dictated verbatim to plaintiff.

40.     Plaintiff's videotaped confession was wholly inconsistent with, and contradicted by, a lack of any physical or forensic evidence linking plaintiff to Mr. Klimchuk's death.

41.     There was no evidence of any struggle in the apartment.

42.     There were no bloodstains anywhere in the apartment other than possibly on her husband's clothes.

43.     There were no guns, shell casings or shell cartridges found inside the apartment or outside in the vicinity of the windows, notwithstanding a police search.

44.     Based upon the coerced, false, fabricated videotaped and written confession, plaintiff was formally arrested on homicide and weapons charges.

45.     On September 6, 2004, plaintiff was arraigned in Kings County Criminal Court on charges of Murder in the Second Degree and Criminal Possession of a Weapon in the Fourth Degree in a complaint sworn to by defendant Collins.

46.     Defendant Collins alleged in his sworn complaint that he was informed by plaintiff that she had shot Mr. Klimchuk in the stomach.

47.     Plaintiff pleaded not guilty and was remanded without bail.

48.     Thereafter, the case was presented to a grand jury, which viewed plaintiff's coerced, false, fabricated videotaped confession.

7

49.     The grand jury was not informed that defendants John Doe 1 and 2 had coerced plaintiff into falsely implicating herself in Mr. Klimchuk's death.

50.     On September 9, 2004, the grand jury indicted plaintiff on false charges of Murder in the Second Degree, Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Weapon in the Fourth Degree.

51.     On November 9, 2004, plaintiff was arraigned on the indictment, pleaded not guilty, and was remanded without bail.

52.     On January 19, 2005, bail was set in the amount of $650,000 in cash.  Plaintiff could not post bail and she remained in custody.

53.     On March 4, 2009, defendants Collins and Hopkins both testified falsely at a pre-trial hearing concerning the circumstances surrounding the false, fabricated confession of plaintiff.  Defendants Collins and Hopkins both falsely testified that on September 5, 2004, at approximately 1:30 p.m., they entered an interview room at the 69th Precinct where the plaintiff was situated and asked her what happened in connection with the death of Mr. Klimchuk. Defendants Collins and Hopkins both falsely testified that plaintiff admitted to them that she killed Mr. Klimchuk in self-defense following several verbal and physical altercations during the night of September 4, 2004, and the early morning hours of September 5, 2004.  Defendants Collins and Hopkins also falsely testified that plaintiff was then administered Miranda warnings and agreed to write down what she had just told them about killing Mr. Klimchuk.  Both defendants then falsely testified that plaintiff wrote down in their presence what she had just told them about killing Mr. Klimchuk in self-defense.  That written statement, which Collins and Hopkins had both falsely testified about, was actually the false, fabricated confession that was

8

created and dictated by defendant John Doe 1 to plaintiff, who copied it down verbatim when defendant John Doe 1 and plaintiff were alone.

54.     Defendant Collins also testified falsely that plaintiff agreed, in his presence, to provide a videotaped statement to the District Attorney's Office, when in fact defendant John Doe 1 had told plaintiff that she could see her daughter after she recited the false, fabricated confession that he created on videotape.  Defendant Collins was not present when defendant John Doe 1 told plaintiff that she could see her daughter after she had also made a video reciting the false, fabricated confession.

55.     On March 10, 2009, the Honorable Matthew D'Emic, Justice of the New York State Supreme Court, Criminal Term, Kings County, granted plaintiff's motion to suppress any alleged oral and written statements that she had made purportedly made to defendants Collins and Hopkins on September 5, 2004, because defendants Collins and Hopkins had not given Miranda warnings to plaintiff at the outset of the interrogation, but Justice D'Emic denied plaintiff's motion to suppress the false, fabricated videotaped confession that she made on that date.

56.     In coercing plaintiff into giving a false, fabricated confession and by falsely testifying about the circumstances of how that fabricated confession came into existence, defendants John Doe 1, John Doe 2, Collins and Hopkins knowingly fabricated evidence against plaintiff.

57.     Defendants failed to disclose to Justice D'Emic at the suppression hearing that plaintiff's videotaped confession was entirely fabricated by defendant John Doe 1, and that plaintiff had been coerced into adopting that fabricated statement as her own statement.

58.     During plaintiff's criminal trial, defendants continued to misrepresent the circumstances under which the false, fabricated confession had come into existence and was adopted by plaintiff.

59.     Plaintiff's false, fabricated videotaped confession was the principal evidence presented against her at trial.

60.     During the course of her trial, plaintiff refused to allow her attorney to put on a battered wife defense because she did not kill Mr. Klimchuk.

61.     On March 19, 2009, just before making his closing argument, the Assistant District Attorney ("ADA") prosecuting the case reported to the Court that he, during the previous day, was given the first name and address of a person who indicated that a "drug dealer" had killed Mr. Klimchuk, not plaintiff.  The ADA did not investigate that information and proceeded to closing argument without requesting an adjournment to fully investigate this exculpatory information.

62.     During his summation to the jury, the ADA focused almost exclusively on plaintiff's false, fabricated videotaped confession.

63.     As a result of the above-described misconduct on the part of defendants, the jury found plaintiff not guilty of Murder in the Second Degree, but guilty of Manslaughter in the First Degree on March 19, 2009.

64.     But for defendants' above-described misconduct, plaintiff would have been neither prosecuted nor convicted.

65.     On April 16, 2009, plaintiff was sentenced to eight years of imprisonment and three years of post-release supervision.

66.     Throughout her prosecution and incarceration, plaintiff maintained her innocence and pursued all possible avenues to prove it.

67.     Plaintiff timely filed a notice of appeal on August 28, 2009.

68.     On April 19, 2011, the Appellate Division, Second Department, issued a decision and order reversing plaintiff's conviction on the law and dismissing the indictment, ruling that plaintiff's videotaped confession should have been suppressed.

69.     On June 22, 2011, plaintiff was released from custody after nearly seven years of incarceration.

70.     One year later, on June 22, 2012, the criminal case against plaintiff was dismissed on motion of the ADA who prosecuted the case for a lack of evidence to prove what happened beyond a reasonable doubt.  Indeed, absent the coerced, false, fabricated videotaped confession, there was no evidence to prosecute plaintiff, let alone convict her.

71.     During the entire course of plaintiff's wrongful prosecution for the death of Mr. Klimchuk, the NYPD never revealed the identity of the officers or detectives who transported plaintiff from her apartment at 1560 East 102nd Street in Brooklyn to the 69th Precinct on September 5, 2004.  In fact, the ADA who prosecuted plaintiff's case admitted that the failure to identify those individuals "created a problem for the Appellate Division."

72.     Defendants apparently never conducted an investigation into other possible suspects, and the person that killed Mr. Klimchuk has never been arrested and prosecuted for the crime to date.

73.     The above-described misconduct of defendants John Doe 1 and 2, Collins and Hopkins, was witnessed or known of by each, and each failed to intervene in the illegal actions of the others.  The City and its employees thereby intentionally, recklessly, and negligently

caused plaintiff to suffer significant injuries, including, but not limited to, loss of liberty for nearly seven years.

74.     Defendants JOHN or JANE DOE 3 through 7 supervised defendants JOHN DOE 1 and 2, Collins and Hopkins, and approved of, oversaw, and otherwise participated in the arrest and prosecution of plaintiff.

75.     Defendants JOHN and JANE DOE 1 through 7, Collins, and Hopkins participated in and/or failed to intervene in the above-described misconduct.

76.     The above-described  misconduct occurred as a direct result of unconstitutional policies, customs or practices adopted, promulgated, and/or enforced by the City through the NYPD, including, without limitation, a practice of coercing false confessions from criminal suspects for the purpose of obtaining convictions, and the inadequate screening, hiring, retaining, training, and supervising of their employees.

77.     The above-described misconduct is neither isolated nor unique.  The City is aware -- through prior lawsuits, notices of claim, and complaints filed with the NYPD's Internal Affairs Bureau, and the City's Civilian Complaint Review Board -- that many NYPD officers, including the individually named defendants, are insufficiently trained in regard to interrogations of criminal suspects and witnesses, and otherwise insufficiently supervised.

78.     The City is also aware that such improper training and supervision has often resulted in deprivation of civil rights.  Despite such notice, the City has failed to take corrective action.  This failure caused the individually named defendants to violate plaintiff's civil rights.

79.     The City was further aware, prior to plaintiff's arrest and prosecution, that the individually named defendants lacked the objectivity, temperament, maturity, discretion, and

disposition to be employed as police officers.  Nonetheless, the City has retained these officers and failed to train and supervise them adequately.

80.     As a result of the above-described misconduct, plaintiff sustained, *inter alia*, the following injuries and damages: her false and malicious prosecution for Murder in the Second Degree; her wrongful conviction for Manslaughter in the First Degree; her unjust sentence to eight years of imprisonment and three years of post-release supervision; her continuous incarceration for nearly seven years; significant restrictions on all forms of her personal freedom during that period; physical injury, pain, and suffering; severe emotional distress, embarrassment, and humiliation; loss of family relationships and enjoyment of life; and deprivation of her constitutional rights.

## Federal Claims

### AS AND FOR A FIRST CAUSE OF ACTION
(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)

81.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "80" with the same force and effect as if fully set forth herein.

82.     Defendants arrested plaintiff NATASHA SEDUNOVA without probable cause, causing her to be detained against her will for an extended period of time and subjected to physical restraints.

83.     Defendants caused plaintiff NATASHA SEDUNOVA to be falsely arrested and unlawfully imprisoned.

84.     As a result of the foregoing, plaintiff NATASHA SEDUNOVA is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individually named defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Malicious Prosecution under 42 U.S.C. § 1983)

85.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "84" with the same force and effect as if fully set forth herein.

86.     Defendants initiated, commenced and continued a malicious prosecution against plaintiff NATASHA SEDUNOVA.

87.     Defendants principally relied upon a coerced, false, fabricated confession.  Absent that confession, defendants would have had no case against plaintiff NATASHA SEDUNOVA.

88.     Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff NATASHA SEDUNOVA.

89.     Defendants lacked probable cause to initiate criminal proceedings against plaintiff NATASHA SEDUNOVA.

90.     Defendants acted with malice in initiating criminal proceedings against plaintiff NATASHA SEDUNOVA.

91.     Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff NATASHA SEDUNOVA.

92.     Defendants lacked probable cause to continue criminal proceedings against plaintiff NATASHA SEDUNOVA.

93.     Defendants acted with malice in continuing criminal proceedings against plaintiff NATASHA SEDUNOVA.

94.     The prosecution terminated in plaintiff NATASHA SEDUNOVA's favor.

95.     As a result of the foregoing, plaintiff NATASHA SEDUNOVA is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individually named defendants in an amount to be fixed by a jury, plus

reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Violation of Right to Fair Trial under 42 U.S.C. § 1983)

96.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "95" with the same force and effect as if fully set forth herein.

97.     Defendants created false evidence against plaintiff NATASHA SEDUNOVA.

98.     Defendants used false evidence against plaintiff NATASHA SEDUNOVA in legal proceedings.

99.     As a result of defendants' creation and use of false, fabricated evidence, plaintiff NATASHA SEDUNOVA suffered a violation of her constitutional rights to a fair trial, as guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

100.    As a result of the foregoing, plaintiff NATASHA SEDUNOVA is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individually named defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Failure to Intervene under 42 U.S.C. § 1983)

101.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "100" with the same force and effect as if fully set forth herein.

102.    Defendants had an affirmative duty to intervene on behalf of plaintiff NATASHA SEDUNOVA, whose constitutional rights were being violated in their presence by other officers.

103.    Defendants failed to intervene to prevent the unlawful conduct described herein.

104.     As a result of the foregoing, plaintiff NATASHA SEDUNOVA's liberty was restricted for an extended period of time, she was put in fear of her safety, and she was humiliated and subjected to handcuffing and other physical restraints.

105.     As a result of the foregoing, plaintiff NATASHA SEDUNOVA is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individually named defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Supervisory Liability under 42 U.S.C. § 1983)

106.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "105" with the same force and effect as if fully set forth herein.

107.     The supervisory defendants, personally caused plaintiff's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees.

108.     As a result of the foregoing, plaintiff NATASHA SEDUNOVA is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individually named defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Municipal Liability under 42 U.S.C. § 1983 for the NYPD's Actions)

109.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "108" with the same force and effect as if fully set forth herein.

16

110.   Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the City and NYPD which is forbidden by the Constitution of the United States.

111.   The aforementioned customs, policies, usages, practices, procedures and rules of the NYPD included, but were not limited to, coercing false confessions from criminal suspects for the purpose of obtaining convictions.  In addition, the City engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training, and supervising its employees that was the moving force behind the violation of plaintiff NATASHA SEDUNOVA rights as described herein.  As a result of the failure of the City to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, the City has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

112.   The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD constituted deliberate indifference to the safety, well-being and constitutional rights of plaintiff NATASHA SEDUNOVA.

113.   The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD were the direct and proximate cause of the constitutional violations suffered by plaintiff NATASHA SEDUNOVA as alleged herein.

114.   The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD were the moving force behind the constitutional violations suffered by plaintiff NATASHA SEDUNOVA as alleged herein.

115.   As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD, plaintiff NATASHA SEDUNOVA was unlawfully arrested,

deprived of her right to a fair trial, and maliciously prosecuted, and wrongfully imprisoned.

116.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiff NATASHA SEDUNOVA's constitutional rights.

117.    The foregoing acts by defendants deprived plaintiff NATASHA SEDUNOVA of federally protected rights, including, but not limited to, the right:

A.    Not to be deprived of liberty without due process of law;

B.    To be free from false arrest/unlawful imprisonment;

C.    To be free from the failure to intervene;

D.    To be free from malicious prosecution; and

E.    To be free from deprivation of the right to a fair trial.

118.    As a result of the foregoing, plaintiff NATASHA SEDUNOVA is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury.

**Supplemental State Law Claims**

119.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "118" with the same force and effect as if fully set forth herein.

120.    Within ninety (90) days after all state law claims alleged herein accrued, plaintiff duly served upon, presented to and filed with the CITY OF NEW YORK, a Notice of Claim setting forth all facts and information required under the New York General Municipal Law 50-e.

121.    The CITY OF NEW YORK has wholly neglected or refused to make an

adjustment or payment thereof and more than thirty (30) days have elapsed since the presentation of such claim as aforesaid.

122.    This action was commenced within one (1) year and ninety (90) days after the cause of action herein accrued.

123.    This action falls within one or more of the exceptions as outlined in New York Civil Practice Law and Rules § 1602.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
(Malicious Prosecution under the laws of the State of New York)

124.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "123" with the same force and effect as if fully set forth herein.

125.    Defendants initiated, commenced and continued a malicious prosecution against plaintiff NATASHA SEDUNOVA.

126.    Defendants caused plaintiff NATASHA SEDUNOVA to be prosecuted without probable cause until the charges were dismissed on or about June 22, 2012.

127.    As a result of the foregoing, plaintiff NATASHA SEDUNOVA is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
(Intentional Infliction of Emotional Distress under the laws of the State of New York)

128.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "127" with the same force and effect as if fully set forth herein.

19

129.    The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

130.    The aforementioned conduct was committed by defendants while acting within the scope of their employment by defendant CITY OF NEW YORK.

131.    The aforementioned conduct was committed by defendants while acting in furtherance of their employment by defendant CITY OF NEW YORK.

132.    The aforementioned conduct was intentional and for the sole purpose of causing severe emotional distress to plaintiff NATASHA SEDUNOVA.

133.    As a result of the aforementioned conduct, plaintiff NATASHA SEDUNOVA suffered emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright, and loss of freedom.

134.    As a result of the foregoing, plaintiff NATASHA SEDUNOVA is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individually named defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A NINTH CAUSE OF ACTION
(Negligent Screening, Hiring, and Retention under the laws of the State of New York)

135.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraph numbered "1" through "134" with the same force and effect as if fully set forth herein.

136.    Upon information and belief, defendant CITY OF NEW YORK failed to use reasonable care in the screening, hiring and retention of the aforesaid defendants who conducted and participated in the arrest and prosecution of plaintiff NATASHA SEDUNOVA.

137.    Defendant CITY OF NEW YORK knew, or should have known in the exercise of reasonable care, the propensities of the individually named defendants to engage in the wrongful

conduct heretofore alleged in this Complaint.

138.    As a result of the foregoing, plaintiff NATASHA SEDUNOVA is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individually named defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A TENTH CAUSE OF ACTION
### (Negligent Training and Supervision under the laws of the State of New York)

139.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "138" with the same force and effect as if fully set forth herein.

140.    Upon information and belief the defendant CITY OF NEW YORK failed to use reasonable care in the training and supervision of the aforesaid defendants who conducted and participated in the arrest and prosecution of plaintiff NATASHA SEDUNOVA.

141.    As a result of the foregoing, plaintiff NATASHA SEDUNOVA is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individually named defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (Negligence under the laws of the State of New York)

142.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "141" with the same force and effect as if fully set forth herein.

143.    Plaintiff's injuries herein were caused by the carelessness, recklessness and negligence of the defendant CITY OF NEW YORK and its employees and agents, who were on

21

duty and acting in the scope of their employment when they engaged in the wrongful conduct described herein.

144.    As a result of the foregoing, plaintiff NATASHA SEDUNOVA is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individually named defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A TWELFTH CAUSE OF ACTION
(*Respondeat Superior* liability under the laws of the State of New York)

145.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "144" with the same force and effect as if fully set forth herein.

146.    Defendant CITY OF NEW YORK is vicariously liable for the acts of its employees and agents who were on duty and acting in the scope of their employment when they engaged in the wrongful conduct described herein.

147.    As a result of the foregoing, plaintiff NATASHA SEDUNOVA is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individually named defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
(Violation of N.Y.S. Constitution Article 1 §12)

148.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "147" with the same force and effect as if fully set forth herein.

149.    As a result of defendants' conduct, plaintiff NATASHA SEDUNOVA was

deprived of her right to security against unreasonable searches, seizures, and interceptions.

150.    As a result of the foregoing, plaintiff NATASHA SEDUNOVA is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

WHEREFORE, plaintiff NATASHA SEDUNOVA demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A)    full and fair compensatory damages in an amount to be determined by a jury;

(B)    punitive damages against the individual defendants in an amount to be determined by a jury;

(C)    reasonable attorney's fees and the costs and disbursements of this action; and

(D)    such other and further relief as appears just and proper

Dated: Brooklyn, New York
       March 7, 2014

LEVENTHAL & KLEIN, LLP
45 Main Street, Suite 230
Brooklyn, New York 11201
(718) 722-4100

By:    _____
       JASON LEVENTHAL (JL1067)

Attorneys for Plaintiff NATASHA SEDUNOVA