UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
NATASHA SEDUNOVA,

       Plaintiff,

           13 CV 5262 (SJ) (RLM)

  v.

           MEMORANDUM
           <u>AND ORDER</u>

THE CITY OF NEW YORK, et al.,

       Defendants.
---------------------------------------------------X

A P P E A R A N C E S
LEVENTHAL & KLEIN LLP
45 Main Street
Suite 230
Brooklyn, NY 11201
By:    Brett H. Klein
*Attorneys for Plaintiff*

NEW YORK CITY LAW DEPARTMENT
100 Church Street
New York, NY 10007
By:    Morgan David Kunz
         Tobias Eli Zimmerman
*Attorneys for Defendant*

**JOHNSON, Senior District Judge:**

       This matter is before the Court on the City's motion to dismiss. In addition to facts alleged in the Amended Complaint, the Court will consider (1) Plaintiff's written confession; (2) Plaintiff's videotaped confession; (3) <u>New York v. Sedunova,</u>

22 Misc.3d 1133(A); 881 N.Y.S. 366 (N.Y. Sup. 2009); and (4) New York v. Sedunova, 83 A.D. 965, 922 N.Y.S.2d 134 (N.Y. App. Div. 2011). The following summary takes all of these into account.

In 1995, plaintiff Natasha Sedunova ("Plaintiff" or "Sedunova") married Alexander Klimchuk ("Klimchuk") in Brooklyn, where they lived together. On the morning of September 5, 2004, Klimchuk was found dead in their home. Sedunova called 911 and reported that she woke up to find him laying on the floor motionless. He had been shot in the abdomen and stabbed in the leg.

Sedunova told the responding officers that she did not know who killed her husband. Two officers, defendants John Doe 1 and John Doe 2 (the "John Does"), drove Plaintiff to her daughter's home, but told her that her daughter was not there. They then took Sedunova to Dunkin' Donuts after she accepted their offer of coffee. Plaintiff claims that during the ride, the John Does convinced her to admit to killing Klimchuk in self-defense. At 11:30am, she was transported to the 69th Precinct stationhouse where she claims the John Does dictated a false confession to her. The John Does then allegedly told Sedunova that her daughter was at the precinct and that she would finally get to see her if she also agreed to a videotaped confession. She did.

*The Confessions*

Sedunova's written confession depicts a history of violence between her and Klimchuk, who she claims abused drugs and alcohol, and gambled, to boot. Sedunova wrote that on the night of September 4, 2004, she arrived home around 10:30pm. Klimchuk accused her of being unfaithful to him. Sedunova wrote that Klimchuk pulled knife on her, placing it at the back of her head. They then fought, punching each other in the face. Sedunova claimed that her face was covered with blood and that she went to the bathroom to clean up. Apparently, that ended this phase of the altercation, as Sedunova claims she then took a bath and went to bed undisturbed. She claims she then woke up in the middle of the night and found Klimchuk in the hallway holding a gun. Kimchuck allegedly threatened to kill her and she shot him. (There is no explanation in the written confession of how Sedunova got a hold of the weapon.) She bagged the weapon and claims to have thrown it out of the window before returning to bed. She did not call police until after she woke up at 8:15am. The written statement provides no explanation for Klimchuck's stab wound.

*The Videotaped Confession*

In the videotaped confession, Sedunova gave further details. As in the written confession, Sedunova claimed that she had been swimming at Coney Island

that day and when she got home, Klimchuk accused her of being unfaithful, approaching her from behind with the knife. She turned around and punched him, and he punched her back. As in the written confession, Sedunova claimed that the fight ended there, and she bathed and went to bed. However, she provides more details as to what happened when she allegedly woke up in the middle of the night to find Klimchuk in the hallway. In this version, she shows a bruised finger and indicates that the finger was hurt during the scuffle in the hallway with Klimchuk, who was holding both a knife and a gun. At one point in the video, Sedunova claimed that she did not know who fired the shot because we "we both pull [*sic*] on the trigger." And although Klimchuk had been stabbed in the leg, Sedunova claimed she did not stab him and did not touch the knife. She also claimed that although the fight lasted 15 minutes, she was barely injured. She pointed out for the camera a bruised finger and several superficial scratches that she did not think required medical attention.

*The Indictment*

Sedunova was arrested and charged with Murder in the Second Degree and Criminal Possession of a Weapon in the Fourth Degree. She was unable to post the set bail of $650,000, and remained in custody pending trial.

*Suppression Motion, Trial and Appeal*

Sedunova filed a motion to suppress her statements as violative of <u>Miranda</u>. The Honorable Matthew D'Emic of the Supreme Court of Kings County granted her suppression motion, in part, and excluded the written confession. However, the videotape was admitted to trial, and Sedunova was convicted of manslaughter. (She was found not guilty of the top count of murder in the second degree.) She was sentenced principally to eight years imprisonment. On April 19, 2011, the Appellate Division, Second Department reversed Sedunova's conviction, finding an insufficient break in the interrogation between the un-Mirandized initial confession and the videotaped confession. Sedunova was released from custody on June 22, 2011, after serving six years and nine months. The criminal case against Sedunova was subsequently dismissed on the State's motion.

DISCUSSION

To defeat a motion to dismiss, Plaintiff must state a plausible claim. <u>See Morgan v. County of Nassau</u>, 720 F. Supp. 2d 229, 234 (E.D.N.Y. 2010) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not legally sufficient to withstand a 12(b)(6) motion. <u>Iqbal</u>, 556 U.S. at 678. Plaintiff must offer "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> (quoting <u>Bell Atlantic</u>

v. Twombly, 550 U.S. 544, 570 (2007)). However, the Plaintiff need not set forth a multitude of facts to survive a motion to dismiss; rather, a "short and plain statement of the claim showing that the pleader is entitled to relief" will suffice. Fed. R. Civ. P. 8(a)(2). The Court must accept all of the allegations in the Amended Complaint as true, and construe all reasonable inferences in favor of the plaintiff. See Connell v. Signoracci, 153 F.3d 74 (2d Cir. 1998).

*Right to Fair Trial*

To defeat the City's motion, Plaintiff must plausibly allege that (1) an investigating official (2) fabricated evidence (3) that is likely to influence a jury's decision; (4) forwarded that evidence to prosecutors; and (5) Plaintiff suffered a deprivation of liberty as a result. The issue here is the second element. Sedunova is asking the Court to consider her confessions to be evidence that was fabricated by the John Does. However, she adopted those statements. Plaintiff claims that she was coerced into adopting the confession but fails to point to facts supporting such a finding.

The circumstances of custodial interrogation are inherently coercive. Miranda v. Arizona, 384 U.S. 436, 455 (1966). Courts must balance several factors in determining whether a particular confession was coerced.

> [T]hose factors that a court should consider to determine whether an accused's confession is voluntary center around three sets of circumstances:

6

> (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials. The relevant characteristics of the individual who confessed are the individual's experience and background, together with the suspect's youth and lack of education or intelligence.

Green v. Scully, 850 F.2d 894, 901-02 (2d Cir. 1988); see also Illinois v. Perkins, 496 U.S. 292, 297 (1990) ("Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within Miranda's concerns.").

When asked at oral argument how the confessions were coercive, counsel for Plaintiff repeated that she was "isolated," "convinced" and "persuaded." However, "much of the point of custodial interrogation is to obtain statements the suspect would not otherwise have chosen to make," McZorn v. Endicott Police Dep't, 2008 WL 163581, at *8 (N.D.N.Y. Jan. 16, 2008), and Plaintiff has not set forth any particular characteristics of her interrogation or custody that would plausibly lead an individual to admit to killing someone they had not killed. Compare Arizona v. Fulminante, 499 U.S. 279, 287 (2003) (finding confession coerced after officers informed suspected child killer of average intelligence and slight build that his life would be in jeopardy in prison and offered him protection in exchange for a confession); with United States v. Shehadeh, 940 F. Supp. 2d 66 (E.D.N.Y. 2012) (confession not coerced where defendant was told that opportunity to speak to a case

agent and receive the benefits of cooperating were fleeting). Therefore, this claim is dismissed.

*Malicious Prosecution*

To maintain a cause of action for malicious prosecution, Plaintiff must demonstrate (1) the initiation or continuation of a criminal proceeding against her; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for the proceeding; and (4) actual malice as a motivation." See Drummond v. Castro, 522 F. Supp. 2d 667, 677 (S.D.N.Y. 2007). In support of this claim, Plaintiff also relies on the theory that her statements were illegally elicited. In other words, if Defendants fabricated the confession, then probable cause to prosecute her was lacking. However, for the same reasons the Court has found that Plaintiff has not plausibly argued that the confessions were her not own, the Court finds that she cannot state a claim that probable cause for her arrest and prosecution was wanting. As probable cause is a complete defense to malicious prosecution, this claim, too, fails and is hereby dismissed. See Manganiello v. City of New York, 612 F.3d 149, 161-6 (2d Cir. 2010); Jefferson v. Javits, No. 06 CV 6616 (NGG)(LB), 2010 WL 3926203, at *3 (E.D.N.Y. Sept. 30, 2010); Selinger v. City of New York, No. 08 CV 2096, 2009 WL 1883782, *5 (S.D.N.Y. Jun. 30, 2009).

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: February 10, 2015 _____/s_____
      Brooklyn, NY                               Sterling Johnson, Jr., U.S.D.J.